# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT RAY EMERSON, | CV F   04-5088 AWI DLB HC |
| Petitioner, | ORDER REGARDING THE SETTING OF AN EVIDENTIARY HEARING |
| v. | |
| JAMES A. YATES, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Christopher Roman Rector, Esq. Respondent is represented by Deputy Attorney General Catherine G. Tennant, Esq.

On December 19, 2003, Petitioner filed a federal petition for writ of habeas corpus in the Sacramento Division of this Court. By order of January 14, 2004, the petition was transferred to this Court. Respondent filed an answer to the petition on August 4, 2005, and Petitioner filed a traverse on September 12, 2005.

The petition presents several grounds of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct. At page 17 of the petition, Petitioner contends that trial counsel failed to make a motion to suppress evidence obtained by Officer Hart. (Petition, at 17.) Specifically, he contends that Officer Hart lacked probable cause to arrest him for driving under the influence of a controlled substance. He further contends that the evidence used by Officer Hart for determining probable cause was the result of the medical

blood analysis that was done at the hospital showing amphetamines in Petitioner's blood and was protected by disclosure by state and federal law, particularly the physician-patient privilege. (Id.)

In his answer, Respondent argues "that there was ample probable cause for Officer Hart to arrest Petitioner for driving under the influence of drugs causing injury to the victim and others." (Answer, at 21.) Respondent initially cites Officer McConnell's police report, then subsequent states "[a]s set forth above, eye witnesses reported Petitioner's erratic, reckless and dangerous driving, which resulted in the head-on collision with the victim's car. Officer Hart was also aware that Petitioner had a glass pipe containing a powdery residue on his person. He recognized this as an instrument for smoking methamphetamine (CT 30 [Officer McConnell's police report].) In view of the foregoing, the California Supreme Court's denial of this claim was not unreasonable." (Answer, at 21-22.)

In his traverse, Petitioner argues that the drawing of Petitioner's blood was not incident to a lawful arrest, but rather a warrantless search without any emergency justification and without Petitioner's consent to the search. Petitioner further argues that Officer Hart lacked probable cause, as the "only evidence of any possible drug use was the pipe found around the Petitioner, although hospital notes indicate med flight nurse found the pipe in his pocket, trial testimony evidences that no individual found the pipe directly on Petitioner." (Traverse, at 9.)

The Fourth Amendment protects individuals against unreasonable searches and seizures. A blood test constitutes a search of the person within the meaning of the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 768 (1966). Courts have summarized Schmerber as permitting warrantless compulsory seizure of blood for the purpose of a blood test if three requirements are met: (1) the officer must believe that he is confronted with an emergency, in which the delay of obtaining a warrant, may threaten the destruction of evidence; (2) the officer must have probable cause to believe the suspect was driving under the influence; and (3) the procedures utilized to extract the blood must be reasonable. Pursuant to Cupp v. Murphy, 412 U.S. 291 (1973), decided after Schmerber, "if there is probable cause to believe that a person committed driving under the influence of alcohol, the taking of such person's blood is valid regardless of whether that person is first formally placed under arrest." Id. at 294-295; see also

1   U.S. v. Chapel, 55 F.3d 1416, 1418-1419 (9th Cir. 1995).  Probable cause exists where, in light of

2   "the totality of the circumstances," there is "a fair probability that contraband or evidence of a

3   crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).

4         At trial, Officer Hart testified that on March 27, 1998, he went to Memorial North

5   Hospital in Modesto, California, to investigate a traffic collision. (RT 60.)  He made contact with

6   Petitioner in the emergency room, at approximately 5:00 p.m.. (RT 61-62.)  In response to the

7   question as to whether he "cause[d] a blood sample to be drawn from [Petitioner]," he stated

8   "yes" at approximately 8:20 p.m. (Id.) The blood test was performed by a nurse.[1]  (RT 62.)

9   Officer Hart then stated that he retrieved some money and a "glass sloped object" from medical

10  personnel that was found with Petitioner.[2]  (RT 63-64.)  It was stipulated that the there was an

11  initial scraping of the pipe which tested positive for methamphetamine, and the Department of

12  Justice testings established that the scraping contained .01 grams of methamphetamine.  (RT 65-

13  66.)

14        In his answer, as previously stated, Respondent cites to Officer McConnell's police report

15  which states:

16        P-1 [Petitioner] was immediately transported to Memorial Hospital in
    Modesto.  Officer Hart #14906 responded to Memorial North Hospital in Modesto
17  to conduct follow up on the traffic collision. Upon Officer Hart's arrival at the
    hospital, he was made aware of a cylindrical object (pipe) that was in P-1's
18  possession while at the hospital. The pipe was determined to be the type used to

---

[1] It was stipulated that the blood was drawn in a medically approved manner and the chain of custody was proper.  (RT 62-63.)

[2] In a supplemental police report, Officer Hart he

    waited for a blood draw to be taken from [Petitioner] as the medical personnel performed a CAT scan and several X-rays.  While waiting in the emergency room, [he] was notified that Manuel Keaton (Trauma Team, Clinical Nurse II) had found [a] clear glass cylindrical object on the back board of [Petitioner] when he arrived at the emergency room.
    Manual related that he contacted [Petitioner] as he was laying in a supine position and the clear glass cylindrical object was laying on his left side on the background.  Due to the nature of the collision, the severity of the injuries of the parties involved and the discovery of the clear glass cylindrical object. I placed John [sic] under arrest for 23153(a) V.C.-Driving under the influence of drugs or alcohol. A blood sample was drawn from the top of [Petitioner's] right hand by Molly Allison, Registered Nurse at 2020 hours. Due to the extent [of] [Petitioner's] injuries, this was the only test available.

(CT 34.)

3

> smoke amphetamines or similar types of drugs. Emerson was sedated for medical treatment and was unable to provide a statement. A medical blood analysis was done at the hospital. The results indicated that Emerson had amphetamines in his system. Based on the pipe the nature of the collision, the erratic driving of Emerson, and the medical blood analysis indicating the presence of amphetamines in Emerson's system, Officer Hart formed the opinion that Emergson was under the influence of drugs. Officer Hart placed Emerson under arrest for driving under the influence of drugs. . . .

(CT 30.)

At trial, Officer McConnell testified that on March 27, 1998, he responded to the scene of the collision. (RT 142.) He made contact with several of the witnesses at the scene. (RT 143-145.) Based on his investigation at the scene of the incident, he opined that the cause of the collision resulted

> From the erratic driving that proceeded northbound from 99 and then the accident itself, and the pipe found in his possession and the medical analysis from the hospital, I determined that the defendant was under the influence of drugs at the time of the collision.

(RT 145.)

In a declaration submitted to the state court, dated August 30, 2001, Officer McConnell stated the following:

> When I was investigating this case, I did become aware that some unidentified medical personnel at Memorial Hospital had voluntarily disclosed that Petitioner, while being treated at the hospital, had undergone a preliminary screen medical blood analysis test which showed positive for methamphetamine. I also knew, as I had written in my report, that the record of this preliminary screen medical blood analysis test including its result was retained by Memorial Hospital and was not given or taken by myself or any other officer of the California Highway Patrol during the investigation of this case.
> I received no information that the actual blood sample taken by medical personnel which was used in the aforementioned preliminary screen medical blood test was retained by hospital personnel. I also did not receive any information as to the identity of the hospital personnel who took that blood sample or the circumstances under which that sample was taken.

(Lodged Doc. 4, Exhibit 1; Declaration of Officer Shane McConnell, at 3-4.)

The Court finds that the *trial record* is lacking of competent evidence for this Court to make a determination as to whether Officer Hart had probable cause to warrant the ordering of a blood test. Specifically, what evidence Officer Hart used to establish probable cause in making a determination to order medical personnel to draw blood testing.

On the basis of good cause, the Court finds it necessary to order an evidentiary hearing in

1  this matter to resolve the single claim of whether Officer Hart had sufficient probable cause to
2  order the blood testing.  See Rule 8 of the Rules Governing Section 2254 Cases; Townsend v.
3  Sain, 372 U.S. 293, 313, 318 (1963).
4      Accordingly, it is HEREBY ORDERED that within **five (5)** court days from the date of
5  service of this order, the parties are directed to coordinate a convenient date and time for the
6  evidentiary hearing and to telephone Mamie Hernandez, at 559-499-5672, with such date and
7  time.[3]

9      IT IS SO ORDERED.
10     **Dated:**   **December 14, 2006**       **/s/ Dennis L. Beck**
   3b142a     UNITED STATES MAGISTRATE JUDGE

---

[3] The Court extended a courtesy call to both counsel advising them that an evidentiary hearing would be held.  The Court spoke with Respondent's counsel, Catherine Tennant, who indicated that she would coordinate a date and time with Petitioner's counsel, Mr. Rector.

5